UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DERICK DIGGS | § | CIVIL ACTION NO. 13-05047 |
| VERSUS | § | SECTION "J"<br>JUDGE CARL J. BARBIER |
| MANSON GULF, L.L.C., and<br>C & G Welding, Inc. | § | MAG. (1)  MAG. JUDGE SALLY SHUSHAN |

*Rule 9 (h)*

## PRE-TRIAL ORDER

I. The pre-trial conference was held Thursday, April 24, 2014 at 2:30 p.m.

II. **COUNSEL FOR THE PARTIES**

Berney L. Strauss, #12527
Rhett E. King, #23811
Strauss & King, APLC
Counsel for Plaintiff,
Derick Diggs

Michael L. McAlpine
Rachel A. Lisotta
McAlpine & Cozad, APLC
Counsel for Defendants,
C&G Welding, Inc. and Manson Gulf, LLC

III. **DESCRIPTION OF THE PARTIES**

A. Plaintiff, Derick Diggs, is a Jones Act seaman working for C & G

Welding, Inc. as a member of the crew of the D/B E.P. PAUP, a Manson

        Gulf, L.L.C. vessel.    He is forty-five years old and resides in New Orleans, Louisiana;

   B.    C&G Welding, Inc. ("C&G") was the employer of plaintiff, Derrick Diggs.  C&G supplies contract labor to companies working in the oilfield service industry.  On the date of the accident, there was a contract in effect between C&G and Manson Gulf, LLC ("Manson Gulf") pursuant to which C&G provided employees, including Derrick Diggs, to work with Manson Gulf equipment at the direction of Manson Gulf supervisory personnel. At the time of the incident, Diggs was working on the EP PAUP, a Manson Gulf vessel, as an oiler.

IV.   **JURISDICTION**

This is a Rule 9 (h) maritime claim / Jones Act negligence claim for personal injuries.

V.   **PENDING AND CONTEMPLATED MOTIONS**

None.

VI.   **SUMMARY OF MATERIAL FACTS**

   A.    Plaintiff's Summary of Facts

Plaintiff, Derick Diggs, is a forty-five year old resident of New Orleans, Louisiana.   Plaintiff was employed by the defendant C & G Welding, Inc., and permanently assigned to Defendant Manson Gulf, L.L.C.'s vessel, D/B E.P. PAUP.  Plaintiff was a member of the crew and his job title was oiler.   As an oiler, Plaintiff worked in the Engine Room department and was supervised by Manson Gulf, L.L.C. employees, Richard Cole, the vessel's

mechanic, and Mark Laminack, the vessel's chief engineer.  Plaintiff was treated as any other member of the crew and engine room department personnel.

Plaintiff's injury occurred during his first hitch aboard the vessel.   In fact, Plaintiff had never worked as an oiler or in a vessel's engineering department prior to this hitch.  Plaintiff prior offshore experience was as a rigger and he had been trained by third parties as a rigger.  The job responsibilities of an oiler are different that than of a rigger.   He was performing the duties of oiler aboard the D/B E.P. PAUP when he sustained his personal injuries.   The date of the incident was May 24, 2013.

Plaintiff was injured while attempting to lift and replace a heavy deck access cover.   The steel cover fits flush into the deck and weighs approximately 75#.   It has two handles and is essentially an oval three by three foot shape.   Plaintiff's supervisor assigned the job of replacing multiple covers to Plaintiff.   It was assigned as a one man job.   Plaintiff had never performed this task prior to this assignment.    Further, Plaintiff had not been instructed on how to safely perform this task.  Plaintiff's supervisor admits that no pre-job safety analysis was performed prior to Plaintiff's assignment to perform this work.   Plaintiff was not negligent.    At the time of the incident, Plaintiff was performing his work duties in the best and safest manner he knew how.  As Plaintiff attempted to move / lift the cover, he injured his ankle, back and neck.  The incident and his injuries were reported and Manson Gulf, L.L.C. (and C & G Welding, Inc.) filled out the appropriate incident reports.  These facts are not disputed.

Prior to this incident, Plaintiff was physically in good health and did not have any pre-existing injury to his back or neck.  Plaintiff's supervisor testified that prior to the incident, Plaintiff performed his manual labor job aboard the vessel without difficulty and appeared to be

in good physical condition without any complaints of back or neck pain.

Since the incident of May 24, 2013, Plaintiff has been disabled from work. He has not reached MMI and remains under the care of his treating physicians. He sustained injuries to the discs in his lumbar and cervical spine. Dr. Bartholomew, Plaintiff's treating neurosurgeon, has recently recommended fusion surgeries on both the cervical and lumbar spine. Plaintiff estimates the cost of these procedures to be in excess of $150,000.00.

Plaintiff's economist, Dr. Randy Rice, in accordance with *Culver II*, has utilized plaintiff's earnings at the time of the incident, concluded that plaintiff has sustained after-tax economic damages which total $567,333.00 assuming Plaintiff can return to full time, minimum wage employment in the future. If Plaintiff remains totally disabled, his after-tax economic damages total $777,092.00

Plaintiff seeks general damages for his permanent disability, pain and suffering, mental anguish and his loss of enjoyment of life resulting from this incident and the injuries to his lower back and neck.

      B.     Defendants' Summary of Facts

The plaintiff alleges that he sustained certain personal injuries while attempting to replace a manhole cover on the D/B EP PAUP, a Manson Gulf vessel, while employed by C&G Welding. The plaintiff claims neck, back and ankle injuries. Plaintiff alleges to still be treating for his neck and back pain, but his ankle injury has resolved.

The alleged accident occurred during an ordinary and routine offshore activity. Plaintiff was asked to replace a man hole cover by Richard Cole, a Manson Gulf mechanic. Cole had removed the man hole covers of the potable tanks on the port side the day prior to the incident for

"sounding," which is the manual measurement of the water in the tanks in order to verify the electronic measurements. Cole removed the covers by himself without incident. After the sounding process was complete, a metal barricade was placed around the open hole. When Cole assigned Diggs to replace the covers, Diggs did not ask for help nor for instructions on how to replace the cover.

About an hour later, Cole walked onto the deck and saw that the barricades were still bolted down and the man hole covers were not replaced. The scene was undisturbed from how he left it earlier. Cole then removed the first barricade and replaced the cover himself. While he was replacing the covers, another Manson Gulf employee, James Hill, helped Cole remove the second barricade and replace the second hatch cover.

As far as damages are concerned, the plaintiff complains of knee and neck pain but has not undergone any surgery. Plaintiff claims that unidentified lumbar and cervical surgeries are recommended, but no medical records have been produced to support the allegation. As far as the plaintiff's wage loss claim, his earnings over the course of his work life are nominal and inconsistent at best.

In conclusion, C&G Welding contends that it was in no way negligent for the alleged incident as it only provides contract labor and does not provide any supervisory personnel or equipment. In addition, Manson Gulf contends that it was in no way negligent in connection with the plaintiff's accident and if there was any fault involved in the event, it was exclusively that of the plaintiff for failing to use proper lifting technique or, in the alternative, for failure to use his Stop Work authority if he did not know how to perform the task or believed it required two men to complete. Further, if the plaintiff has sustained any injuries, they should not prevent him from

returning to gainful employment.  As such, this is a case of highly questionable liability with limited substantiated damages.

    VII.    **UNCONTESTED MATERIAL FACTS**

(1)    Plaintiff was employed by C&G Welding, Inc. at the time of the incident;

(2)    The vessel EP PAUP was owned by Manson Gulf, LLC at the time of the incident;

(3)    Plaintiff was a member of the crew of the D/B E. P. PAUP

    VIII.    **CONTESTED ISSUES OF FACT**

(1)    Whether the pain plaintiff now alleges is similar to pain he suffers as a result of injuries sustained as a result of an injury sustained from a car accident, for which he underwent hip surgery.

(2)    Whether the pain plaintiff now alleges is similar to pain he suffers as a result of hip surgery.

(3)    The extent of the injuries claimed or sustained by the plaintiff, the nature and extent of any treatment of the claimed injuries, and the extent of any physical disability he may have sustained.

(4)    Whether the injuries alleged by plaintiff occurred as a result of the incident.

(5)    Whether plaintiff is able to return to gainful employment, and if so at what wage level.

(6)    The extent of any wage loss plaintiff may suffer.

(7)    Whether plaintiff is in need of any additional medical treatment.

(8)   Whether plaintiff's physician has recommended lumbar surgery.

(9)   Whether plaintiff's physician has recommended cervical surgery.

(10)  Whether Derrick Diggs disclosed prior neck and back injuries to C&G Welding at the time he applied for a job.

(11)  The treatment received by Derick Diggs for work related accidents and automobile accidents prior to and after the accident alleged herein.

(12)  The mechanics of the accident alleged by Derrick Diggs.

(13)  What part(s) of Derrick Diggs' body, if any, were hurt.

(14)  Whether the replacement of the manhole cover is a "one man" job.

(15)  Whether the metal barricade over the open manhole was removed.

(16)  Whether Derrick Diggs placed safety tape around the open hatch after he attempted to move the cover.

(17)  Whether Derrick Diggs was informed that he was being send ashore by Mark Laminack prior to the incident.

(18)  Whether Derrick Diggs complained on the phone about how he was treated by Mark Laminack immediately preceding the incident.

(19)  Whether plaintiff actually attempted to move the cover.

(20)  Whether plaintiff received training as an oiler from Manson Gulf personnel.

(21)  Whether plaintiff asked for help to move the cover.

(22)  All inferences and issues arising out of or implicit in the contested issues of fact.

(23)    Whether Plaintiff was properly trained to replace a man hole cover.

(24)    Whether Plaintiff knew how to properly replace a man hole cover.

(25)    Plaintiff's wage base.

(26)    Plaintiff's residual earning capacity.

(27)    Whether Plaintiff properly mitigated his damages by following recommended medical advice and/or seeking training or alternative employment in the form of vocational training and continued education.

(28)    The credibility of Plaintiff.

(29)    The weight of the manhole cover.

(30)    Plaintiff's functional limitations.

(31)    Plaintiff's loss of income and/or earning capacity.

(32)    Whether the deck of the D/B EP PAUP was simply the "inert locale" of the plaintiff's accident in that the EP PAUP played no role in causing the incident.

(33)    Whether plaintiff had full "stop work" authority, knew he had full "stop work" authority, and had training regarding same and could have exercised it at any time.

(34)    Whether Diggs knew he had the authority to use "stop work" authority under the circumstances, without reprisal, but did not exercise or attempt to exercise "stop work authority" prior to the incident.

(35)    The nature and extent of any future medical care or treatment plaintiff may require, if any;

   (36)     Whether or not defendant had a good faith basis to terminate maintenance and cure benefits;

   (37)     Whether or not defendants were negligent under the Jones Act;

   (38)     Whether or not Manson Gulf, L.L.C. was Plaintiff's borrowing Jones Act employer;

   (39)     Whether or not defendants were negligent under the general maritime law;

   (40)     Whether or not a Job Safety Analysis was necessary under the circumstances and whether or not a JSA was performed prior to Plaintiff's attempting to complete the assigned task;

   (41)     Which cover, and its purpose, weight and size, was Plaintiff actually assigned to replace when he injured himself;

IX.    **CONTESTED ISSUES OF LAW**

   (1)     Whether Manson Gulf, LLC is entitled to limit its liability to the value of the vessel.

   (2)     Any negligence on the part of C&G Welding, Inc. and Manson Gulf, LLC

   (3)     Whether the EP PAUP was seaworthy.

   (4)     The comparative and contributory fault of plaintiff.

   (5)     Whether the May 2013 accident is the legal cause of the injuries complained of by plaintiff.

   (6)     Whether Derrick Diggs is disqualified for receiving Maintenance & Cure because he willfully failed to disclose prior hip injuries when he applied for a job at C&G Welding.

(7)   Any issues of law contained in or implicit in the issues of fact and/or law.

(8)   The credibility of any plaintiff witness.

(9)   The relevancy of the testimony of any plaintiff witness.

(10)   Quantum

(11)   Whether Plaintiff has properly mitigated his damages.

(12)   Whether Plaintiff is barred from raising any cause of action against any defendant to the extent he may have subrogated his rights and/or claims for payment of any medical expenses, under any policy of health, accident, medical, hospitalization, worker's compensation and/or any other form of insurance.

(13)   Whether plaintiff willingly assumed the risks associated with the incident so as to bar or mitigate recovery under the circumstances.

(14)   Whether or not defendant had a good faith basis to terminate maintenance and cure benefits;

(15)   Whether or not defendants were negligent under the Jones Act;

(16)   Whether or not Manson Gulf, L.L.C. was Plaintiff's borrowing Jones Act employer;

(17)   Whether or not defendants were negligent under the general maritime law;

(18)   Whether or not a Job Safety Analysis was necessary under the circumstances and whether or not a JSA was performed prior to Plaintiff's attempting to complete the assigned task;

(19)   Whether or not Plaintiff had been properly trained to perform the assigned

task;

(20) Whether or not the task assigned should have been performed by more than one man under the circumstances, such as the level of experience and training Plaintiff possessed;

(21) Whether or not the D/B E. P. PAUP was unseaworthy and whether that unseaworthiness caused Plaintiff's injury and damages;

(22) Whether or not Plaintiff is entitled to attorneys' fees and punitive damages for Defendant's refusal to pay maintenance and cure benefits;

(23) Whether Defendants' negligence played any part, however slight, in causing Plaintiff's injuries / damages.

X. **EXHIBITS**

    A. Plaintiff's listing of exhibits:

        ADMITTED WITHOUT OBJECTION

        1. Plaintiff wage and earnings information while employed with C & G Welding, Inc.;

        2. Vessel documentation for the BARGE E. P. PAUP;

        3. Blueprint / Specification of the BARGE E.P. PAUP;

        4. Job Safety Analysis for the job at the time of Plaintiff's injury;

        5. Incident reports pertaining to Plaintiff's injury, including handwritten statements;

        6. The 'man' or deck hole cover in question;

10. The logs of the BARGE E.P. PAUP;

11. All contracts between Callais / C & G Welding, Inc. and Manson Gulf;

12. MEL Insurance Policy #ANV100223A-13-1 issued by ANV Global Services, Inc. for Lloyd's Syndicate 1861;

13. MRI / Diagnostic Films pertaining to Plaintiff's cervical and lumbar spine;

14. Coast Guard Report of Injury;

15. Safety Manual utilized aboard the BARGE E.P. PAUP and by members of the crew;

16. Records of all pre-tour safety meetings;

17. Any exhibit listed by the Defendant.

    WITH OBJECTION:

18. Job description of Oiler / Wiper;   Vague

19. Job description of Rigger / Deckhand;   Vague

20. Photographs of the scene of the incident;   Vague

21. Plaintiff's medical and hospital records, including billing, pertaining to this incident;   Vague

22. Any root cause analysis or investigation into the incident in question;   Vague

B.      Defendant's listing of exhibits:

WITHOUT OBJECTION

1. U.S. Department of Labor Reports and Employer Report of Injury or Illness dated 5/29/13;

2. C&G Welding, Inc. Incident Report;

3. Manson Gulf Incident Report;

4. Derick Diggs' Personnel File, including his pre-employment medical file, medical questionnaire and drug screens;

5. Derick Diggs' Payroll Check Register;

6. Medical records of Occupational Medical Services;

7. Medical records of Dr. Christopher Cenac;

8. Medical records of Dr. Bartholomew;

9. Medical records of Dr. Zoran Cupic;

10. Medical records of Memorial MRI & Diagnostic;

11. Medical records of ISR Physical Therapy;

12. Marine Master Work Contract between C&G Welding, Inc. and Manson Gulf, LLC;

13. Medical records of UT Physicians;

14. Medical records of Thibodeaux Rehabilitation Services;

15. Medical records of Advanced Rehabilitation Services;

16. Medical records of Uptown Premier Medical Rehabilitation;

17. Darwin Insurance Policy;

18. Medical records of Occupational Medicine Services;

19. Medical records of Dr. Bradley Bartholomew;

20. Social Security Administration records;

21. Internal Revenue Service records;

22. Manson Gulf Daily Barge Reports;

23. Manson Gulf Personnel on Board List;

24. Manson Gulf Safety Meeting records;

25. Manson Gulf Job Safety Analysis reports;

26. Any and all surveillance of plaintiff;

27. Expert report of plaintiff's expert economist, G. Randolph Rice;

28. Any documents produced by any other party in the course of discovery;

29. Any expert reports produced by any other party;

WITH OBJECTION

30. Triple C Enterprise's New Hire Package;   relevance, hearsay

31. Records of the Louisiana Department of Public Safety and Corrections;  relevance,

32. Records of the Louisiana Division of Adult Probation and Parole; relevance

33. Plaintiff's Personnel File from Baystone Contractors; relevance, hearsay,

34. Plaintiff's Personnel File from Oilfield Production; relevance,

...

hearsay,

35. Plaintiff's Personnel File from Global Offshore Resources;

relevance, hearsay,

36. Plaintiff's Personnel File from Audubon Bridge Constructors;

relevance, hearsay

37. Plaintiff's Personnel File from Marquette Transportation;

relevance, hearsay

38. Personnel file from Coastal Catering; relevance

39. Expert report of Kenneth Boudreaux, economic expert; hearsay

40. Expert report of Elliot Tulloch, liability expert; hearsay

41. Expert report of vocational rehabilitation expert; hearsay

42. Criminal records of the plaintiff; relevance

43 Any other documents that may become know as supportive documents throughout the discovery period of this matter.   Vague

XI. **DEPOSITION TESTIMONY**

Depositions of Derick Diggs and Richard Cole may be used at trial and during cross-examination.

XII. **CHARTS, GRAPHS, MODELS and DIAGRAMS**

The parties may use enlargements of certain documents produced during discovery.

XIII. **WITNESSES**

A. Plaintiff's list of witnesses:

1. Derick Diggs;

2. Bradley Bartholomew, M.D.;

3. Craig Ledet, D.C.;

4. Eric Williams, M.D.;

5. Zoran Cupic, M.D.;

6. Joseph H. Gray, PT;

7. Lawrence W. Glorioso III, M.D.;

8. G. Randolph Rice, Ph.D.;

9. Chad Callais;

10. Curtis Callais, Jr.;

11. Richard Cole;

12. Ray Martinez;

13. Mark Laminack;

14. James Hill;

15. The crew of the BARGE E.P. PAUP;

16. The C & G Welding, Inc. payroll employees aboard the BARGE E.P. PAUP;

17. Healthcare specialist that provided care to Plaintiff relating to his prior hip condition;

18. Any witness necessary to authenticate Plaintiff's exhibits;

19. Any witness listed by the Defendants.

B. Defendants' list of witnesses:

1. Derick Diggs, plaintiff;

2. Chad Callais, C&G Welding, Inc., 5551 Highway 311, Houma, LA 70360 - (985) 851-3400 - The witness will testify as to the facts and circumstances regarding plaintiff's employment;

3. Curtis Callais, Jr., C&G Welding, Inc., 5551 Highway 311, Houma, LA 70360 - (985) 851-3400 - The witness will testify as to the facts and circumstances regarding plaintiff's employment;

4. Dr. Robert Davis - The witness will testify as to the medical treatment of the plaintiff;

5. Dr. Zoran Cupic - The witness will testify as to the medical treatment of the plaintiff;

6. Dr. Bradley Bartholomew - The witness will testify as to the medical treatment of the plaintiff;

7. Ray Martinez, of belief and information to be employed by Manson Gulf, LLC - The witness will testify as to the facts and circumstances of the plaintiff's alleged accident;

8. Richard Cole, of belief and information to be the supervisor of plaintiff at or around May 24, 2103 - The witness will testify as to the facts and circumstances of the plaintiff's alleged accident

9. Mark Laminack, of belief and information to be employed by Manson Gulf, LLC - The witness will testify as to the facts and circumstances of the plaintiff's alleged accident;

10. James Hill, of belief and information to be employed by Manson Gulf, LLC - The witness will testify as to the facts and circumstances of the plaintiff's alleged accident;

11. Medic aboard EP PAUP, name unknown - The witness will testify as to the medical treatment of the plaintiff;

12. Any other crew members aboard the EP PAUP with pertinent information;

13. Dr. Christopher Cenac, Sr. - The witness will testify per his report;

14. Vocational Rehabilitation expert Barney Hegwood - The witness will testify as per his report;

15. Kenneth Boudreaux, PhD., economic expert - The witness will testify per his report;

16. Representatives of any hospital, clinic, pharmacy, or any other type of medical providers, which may have provided medical treatment, supplies, and/or services to the plaintiff;

17. Representatives of any former employer of the plaintiff;

18. Any witness needed to authenticate any document;

19. Any witness needed to impeach any testimony and/or character of any witness;

20. Any witness named by any other party in this matter;

21. Elliot Tulloch, liability expert - The witness will testify as per his report; and

      22.     Any other potential witness discovered during the discovery of this matter.

XIV.   This case will be tried to the bench.

XV.   The issue of liability <u>will</u> <u>not</u> be tried separately from that of quantum.

XVI.   The parties are unaware of any other matters that might expedite a disposition of this case.

XVII.   Our trial shall commence on **June 2, 2014** at **8:30 a.m.**  This trial will last one to two days.

XVIII.   This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injuries.

XIX.   Possibility of settlement of this case was considered.  The parties have agreed to a full day of mediation with mediator, Maurice Hebert, on May 9, 2014, pending production of requested medical records recommending surgery.

XX.   **SIGNATURES**

STRAUSS & KING, APLC          McALPINE & COZAD

*s/ Berney L. Strauss*              *s/Rachel A. Lisotta*
Berney L. Strauss, #12527       Michael L. McAlpine, #9195
Rhett E. King, #23811             Franklin H. Jones, III  #7480
406 Magazine Street, Suite 300   Rachel A. Lisotta, #34644
New Orleans, Louisiana 70130    365 Canal Street, Suite 2730
504. 523-0033 (telephone)        New Orleans, Louisiana 70130
504. 523-0109 (facsimile)         504. 561-0323 (telephone)
                                              504. 528-9442 (facsimile)


Done this _____ day of _____, 2014, in New Orleans, Louisiana.


_____
UNITED STATES DISTRICT JUDGE